Philip Wayne BERRYMAN, Petitioner-Appellant, Cross-Appellee,

v.

Edward COLBERT, Warden, Respondent-Appellee, Cross-Appellant.

Philip Wayne BERRYMAN, Petitioner-Appellee,

v.

Edward COLBERT, Warden, Respondent,

William L. Cahalan, Intervening Defendant-Appellant.

Nos. 75–1413, 75–1414 and 75–1767.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 9, 1976.

Decided July 21, 1976.

Arthur J. Tarnow, Detroit, Mich., for appellant in 75–1413 and for appellee in 75–1414 and 75–1767.

Frank J. Kelley, Atty. Gen. of Michigan, Keith D. Roberts, Asst. Atty. Gen., Lansing, Mich., William L. Cahalan, Pros. Atty., Detroit, Mich., Dennis M. Powers, Pros. Attys. App. Serv., Edward R. Wilson, Lansing, Mich., for appellee in 75–1413 and for appellant in 75–1414 and 75–1767.

Before PHILLIPS, Chief Judge, and EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

■ Appellant Berryman filed a timely appeal from the District Judge's order of December 26, 1974, denying his petition for writ of habeas corpus as it applied to his conviction for conspiracy to commit unarmed robbery. A timely notice of appeal as to the District Judge's grant of the writ in appellant's murder conviction was also filed in the name of the People of the State of Michigan which we recognize as effective for purposes of our appellate jurisdiction.[1]

1. Before the District Court this habeas corpus case was properly styled *Berryman v. Colbert,* *Warden,* since Colbert had custody of the prisoner. 28 U.S.C. § 2243 (1970). The Attorney

The District Judge held that the state court trial record conclusively showed that appellant's Fifth Amendment right not to testify against himself had been violated by improper prosecutorial comment upon his failure to take the stand. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Although the same comments were relied upon by appellant in attacking both his conviction for conspiracy to rob and his conviction for murder, the District Judge held that the proofs concerning the conspiracy to rob (in contrast to the proofs applicable to the murder count) were so strong that he could appropriately hold that the prosecutorial error as to the conspiracy to rob conviction was harmless beyond reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We affirm the District Judge on both issues.

The background of these appeals is a sordid story, indeed. We relate them primarily through the summary of evidence at the state court trial recited in the Memorandum Opinion of the District Judge:

At trial Miss Alexandria Telly testified that she was approached by petitioner at a Detroit Bar on the evening of November 4, 1970. Petitioner offered Miss Telly $100 if she would help him drug a man and steal his money. After accepting the deal, Telly and petitioner proceeded to another bar, where they met Van Meter.[2] Van Meter introduced Telly to the intended victim, Dennis Elmer Pack. There followed a series of moves to various bars, including the one owned by Mr.

Pack. Further testimony disclosed that later that evening, Pack and Telly went to a motel at Pack's suggestion. The prosecution attempted to draw the inference that at some point in the evening of the 4th of November petitioner drugged Mr. Pack in order to render him unconscious so that he could be robbed.

Miss Telly testified that at approximately 12:30 A.M. on November 5, 1970, she and Pack checked into the Crest Motel. They went to Room 21 and had intercourse. She testified that shortly thereafter Pack complained of dizziness. Miss Telly stated that at about the same time she passed out on the bed. The room clerk at the motel testified that Pack checked out between 2:30 and 3:00 A.M. the morning of November 5th. There was no evidence that anyone saw Pack alive after this date. His body was found in the back of his own automobile on November 14, 1970, in a Ford Motor Company parking lot. The autopsy disclosed that death resulted from two shotgun wounds. Further evidence revealed that at the time the body was found, Mr. Pack had been dead at least 48 hours, and possibly as long as ten days. There was no evidence that he had been drugged.

On the morning of November 5, 1970, Miss Telly awoke to find petitioner in the motel room with her. Petitioner told her that Pack was gone and that he did not get the money. They left the motel and met petitioner's friend, Long John Reside. The trio then went to have break-

General of Michigan appeared in the District Court to represent Colbert—a state official. The Attorney General did not see fit, at the time, to file an appeal on behalf of respondent Colbert. Before this court, however, the Attorney General has chosen to adopt the Notice of Appeal filed by the Wayne County Prosecutor. The Prosecuting Attorney never sought to appear in this case in the District Court before entry of the order appealed from. Under the facts the Prosecuting Attorney has no standing in this appeal except to the extent that the Attorney General, as counsel for Colbert, allows him to represent the named respondent or sanctions his representation. *See In the Matter of Leaf Tobacco Board of Trade,* 222 U.S.

578, 32 S.Ct. 833, 56 L.Ed. 323 (1911). *See also Commanding Officer United States Army Base, Camp Breckinridge, Ky. v. United States,* 207 F.2d 499 (6th Cir. 1953); *United States v. Seigel,* 83 U.S.App.D.C. 88, 168 F.2d 143, 144 (1948). The District Judge was correct in rejecting the Prosecuting Attorney's belated motion to be allowed to intervene and the appeal from the denial of that motion is dismissed under Rule 8 of the Rules of the United States Court of Appeals for the Sixth Circuit.

2. Van Meter was a co-defendant with appellant at the state court trial and was convicted on the same two charges. His conviction was reversed by the Michigan Court of Appeals.

fast. Telly testified that at breakfast the following conversation took place:

"Well, we sat down and ordered breakfast. Long John was reading the newspaper. And I didn't say anything to Wayne because I was stunned, I didn't know what to say to him and he was sitting there shaking, you know, with his elbows on the table and I says what's the matter, and he says, I did something wrong, he says but I can't tell you what it is. I says, well, why? He says, well, where are you going to be tonight? I says, where do you think I will be, down at Anderson's. He says, well I'll come talk to you there." (Tr. p. 165)

Miss Telly did not see petitioner again until she appeared in court.

The state court record also shows that another witness, Sharon Brown, also a prostitute, testified that she had been told by appellant Berryman about his plan for "juicing" a bar owner, and that he needed a go-go dancer to work with him on the operation. Sharon Brown testified that she had recommended Alexandria Telly and introduced her to Berryman, and subsequently that Telly had told her she was going with Berryman because "she needed the money."

Still another government witness, Elmer Curtis Turbyfill, testified that he knew Berryman and that three or four days before the night of the murder involved in this case in a conversation with Berryman, Berryman had told him about "juicing" and "rolling" a man. He also testified that Berryman had said that "usually you take a girl and distract a guy or something to get her to put it in a drink for him."

There was very little testimony directly applicable to the murder itself. A Dearborn police officer testified that he found the body of Elmer Dennis Pack on the floor of Pack's own car in a parking lot at the Ford Rouge plant, and a medical examiner testified that gunshot wounds had caused Pack's death.

At the trial appellant Berryman did not testify. The defense presented only one witness. Her testimony, tendered presumably as an alibi for Berryman's codefendant Van Meter, was inconclusive as to Van Meter's whereabouts on the night concerned, had nothing to do with Berryman, and was totally without probative force as to either the murder or the conspiracy to rob charge.

Turning to the appellant's only appellate issue, we find five instances of prosecutorial comment which appellant claims to represent Fifth Amendment violations:

1. During the prosecutor's opening statement he said:

In this case, we are going to give you both circumstantial and direct evidence as to the commission of the conspiracy. But, as to the attempt or the actual robbery and the murder, we are going to give you circumstantial evidence. Nobody who we can get to testify saw it. So, we have to go on the facts, the physical facts as they are described to you.

2. During the prosecutor's closing statement he said:

All right. Now, finally, to establish the robbery murder, the felony murder, we are relying almost entirely upon circumstantial evidence. Nobody was there when the robbery took place. Nobody that we can bring here to testify. *The defendants here, yes, but we can't get them to testify.* So, it is a matter of relying upon physical facts that were described to you by the police officer, and from those physical facts, then you must make an inference, you must say, beyond a reasonable doubt certain things did happen. (Emphasis added.)

\* \* \* \* \* \*

3.

Now, the People began by putting on the stand an admitted prostitute. At that point you can throw up your hands and say, "Nuts" and not believe a thing. I asked you before the trial started to pay attention to how she behaved in that chair. I hope you did. I want to suggest to you that almost everything she said, outside of the re-

lating of certain conversations to you, was corroborated by other witnesses. And they weren't in the courtroom. They couldn't hear what one another was saying. Federoco, Sharon Brown, and Federoco, you know, he's the guy who owned the bar and slept with the other prostitute roommate. Sharon Brown, a prostitute, admittedly, but they're the only ones available who weren't in that part of that action at the Anderson Gardens.

    *    *    *    *    *    *

4.

All right. Now, the only witness that we have on the other side then is Francis Bevins. That's all. That's all we've got for the alibi. Here's a woman who says that he came home and it was dark, "I don't know what time it was."

5. During the prosecutor's rebuttal statement he said:

I expect to be called upon as a rebuttal to rebut alternative theories as to how this killing took place or who did it. No serious alternative has been suggested by the defense. So in that sense I'm out of a job.

You must find that the evidence in this case, that is the circumstantial evidence beyond a reasonable doubt, supports the theory of guilt in this felony murder. You must also find that with the facts that we have described to you there is no other reasonable explanation as to what took place. Ladies and Gentlemen, no other reasonable explanation has even been suggested here and if you use your imaginations, I defy you to come up with one. You can come up with some ideas that might explain it but they've got to be reasonable.

Suicide is out.

The Prosecutor's arguments skirted dangerous ground. The paragraph marked 2. above, and more particularly the sentence italicized therein, we deem to be in square violation of *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965):

We . . . hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.
*Griffin v. California, supra* at 615, 85 S.Ct. at 1233.

And, of course, we note that appellee Warden, through the Attorney General, concedes that this is true, although arguing that the comment did not fatally prejudice the case. This court has previously enforced the *Griffin* standard. *See Scott v. Perini,* 439 F.2d 1066 (6th Cir. 1971); *Kinser v. Cooper,* 413 F.2d 730 (6th Cir. 1969).

Although we recognize that an appropriate cautionary instruction on the right of the defendant to remain silent was given, we do not feel that it could have cured the effect of the prejudicial and improper comment above as to the murder charge. The proofs of appellant's participation in the murder itself arise solely from circumstance and inference. In such a case—properly termed "weak" by the District Judge—we cannot consider the prosecutorial misconduct to be harmless beyond reasonable doubt. As to this issue the District Judge is affirmed in issuing the writ, unless the state, within a reasonable time, retries appellant.

As to appellant Berryman's appeal from dismissal of his petition for writ of habeas corpus in relation to the conviction for conspiracy to commit robbery, like the District Judge, we reach an opposite conclusion. In this instance the proofs of such a conspiracy were direct, positive and undisputed on the state court trial record. The comment principally complained of did not refer directly to the conspiracy to rob. We do not, however, hold that it was totally inapplicable. Rather, we hold that the rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is applicable to this count:

[W]e hold . . . that before a federal constitutional error can be held

harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Chapman v. California, supra* at 24, 87 S.Ct. at 828.

We affirm the District Judge's holding that, as to this count, the prosecutor's erroneous comment was harmless beyond reasonable doubt. The overwhelming and undisputed evidence of appellant's guilt fully supports the District Judge's conclusion. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Since, as indicated, we deem the respondent's notice of appeal to be effective for purposes of this appeal, we vacate the District Judge's order of March 25, 1975, denying a stay of proceedings, as well as his orders of May 12, 1975 and December 26, 1974, and remand this case to the District Court for entry of an order granting the petition for writ of habeas corpus as to the murder conviction (unless the State of Michigan sees fit to retry appellant on this charge within a reasonable time) and denying said writ as to the conspiracy to rob conviction.