**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas O. ROBINSON, Jr., and Aleida Robinson, Defendants-Appellants.**

**No. 82–5366.**

United States Court of Appeals,
Sixth Circuit.

Argued May 4, 1983.

Decided Sept. 7, 1983.

Certiorari Denied Jan. 9, 1984.
See 104 S.Ct. 722.

**1096**

Bart Durham, Joseph M. Dalton, Jr., (argued), Nashville, Tenn., for defendants-appellants.

Joe B. Brown, U.S. Atty., Robert J. Washko, Asst. U.S. Atty. (argued), Nashville, Tenn., for plaintiff-appellee.

Before KEITH and WELLFORD, Circuit Judges, and COHN, District Judge.*

WELLFORD, Circuit Judge.

Defendants-appellants appeal their convictions by a jury in the United States District Court for the Middle District of Tennessee (Wiseman, J.) of mail fraud, 18 U.S.C. § 1341, and aiding and abetting, 18 U.S.C. § 2. The question is whether reversible error occurred at trial when the prosecutor was permitted by the court to comment on the failure of one of the defendants to take the stand in his own defense. We find that the misconduct deprived the defendant Thomas Robinson, Jr., of a fair trial under the Fifth Amendment and 18 U.S.C. § 3481, and therefore reverse his conviction.[1] Because we find that the error did not affect the trial of Aleida Robinson, we affirm her conviction.

Thomas Robinson, Jr., was convicted of two counts of mail fraud based on two separate fires and insurance claims and was sentenced to two five-year concurrent sentences, which were suspended except for five months and 29 days. Aleida Robinson, his wife, was convicted of one count and received two years probation.

The prosecution sought at trial to demonstrate that the defendants had fraudulently claimed losses on real and personal property destroyed by fire at their Clarksville, Tennessee, home and on business property destroyed by fire at a truck stop leased by Mr. Robinson in Guthrie, Kentucky. The prosecution introduced evidence to show not only that the losses submitted exceeded those actually incurred, but also to imply that Mr. and/or Mrs. Robinson set or caused the fires to be set. Both fires took place under suspicious circumstances in which the Robinsons were allegedly implicated.

I.

Appellants contend that the following statement by the Assistant U.S. Attorney at the rebuttal stage of closing argument entitles them to a new trial:

He could have taken the stand and explained it to you, anything he wanted to. The United States of America has given him, throughout, the opportunity to explain.

Appellee contends that the statement was properly made because the defense attorney had "baited" the prosecutor by alleging in

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Section 3481 provides as follows:

 In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him.

 The Supreme Court has commented on the legislative history of the statute as follows:

 The legislative history shows that 18 U.S.C. § 3481 was designed, *inter alia*, to bar counsel for the prosecution from commenting on the defendant's refusal to testify.

 *Griffin v. California,* 380 U.S. 609, 612 n. 4, 85 S.Ct. 1229, 1232 n. 4, 14 L.Ed.2d 106 (1965).

closing argument that the government had not "played fair" in its investigation and in the course of the trial.[2] The district judge agreed with the government that the defense had "opened the door" to a comment on the defendants failure to take the stand. Out of the presence of the jury, the judge made the following ruling:

> Yes, Mr. Washko, I will tell you what, the Fifth Amendment ties the Government's hands in terms of commenting upon the defendants' failure to testify. But that tying of hands is not putting you into a boxing match with your hands tied behind your back and allowing him to punch you in the face.
>
> That is not what it was intended for and not fair. I will let you say that the defendants had every opportunity, if they wanted to, to explain this to the ladies and gentlemen of the jury.
>
> We might get reversed on it. Mr. Durham opened the door not less than four times in his argument on that question. I will let you comment on it in response.

Tr. at 681.

The Government also contends that if it was error for the comment to have been permitted, that that error was cured by the court's later instruction to the jury:

> The law does not require a defendant to prove his innocence or produce any evidence at all, and no inference whatever may be drawn from the election of a defendant not to testify. The government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so you must acquit him.
>
> . . . .
>
> The jury will also keep in mind this: The law never imposes upon defendants in criminal cases the burden or duty of calling any witnesses or producing any evidence, and no adverse inference may be drawn from their failure to do so.[3]

In the alternative, the government argues that error, if any, was harmless.

## II.

■ It is clear under *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and *Wilson v. United States,* 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893), that no reference may be made at trial to a

---

**2.** The government argues that the following statements by defense counsel during closing argument entitled the government to make reference to the defendant's failure to testify:

> Before I forget, my theme in arguing this case to you, I believe, is going to be that the Government has a duty to be fair. They have a duty to prove their case. And they have a duty to prove it, if they are going to prove it, fairly and squarely. And in this case, they haven't played straight with you members of the jury.
>
> . . . .
>
> By the way, all those statements, I don't know how many statements we heard of Mr. Robinson, they were all about the arson. Did they ever give him a chance to explain about these sort of things, about mail fraud?
>
> Did they ever give this man an opportunity in their many, many statements they took at the time to say, "Well, I had two bedroom sets."
>
> . . . .
>
> . . . when he came to Tennessee in October, or shortly after the fire, within a month or so, they interviewed him about the arson.
>
> . . . .
>
> . . . They never gave him a chance to explain.

. . . .

> Now, would you like to get indicted for that, without the Government being fair, and being able to explain, have him explain before you, members of your own community rather than before the agents?
>
> Now, here is what the Government, to be fair with the jury, should have done. They should have taken those items in the Kentucky inventory and just proved them. Why let the defendant disprove them, giving him an opportunity to explain?
>
> . . . .
>
> The Government has not brought you all the proof that they should to show you guilt and innocence.
>
> They brought you the type of proof that they carefully filtered, to try to infer [sic] circumstantially the guilt of Mr. Robinson. Shouldn't they have gone through and brought you evidence of more situations where there have been false claims rather than one or two for Kentucky?

Tr. at 658, 670–71, 674, 676.

**3.** The district judge gave these instructions during the course of his charge, not as a caution to the jury during the Government's closing argument. *See* Tr. at 694, 698.

defendant's failure to testify. The Supreme Court held in *Griffin:*

> Comment on the refusal to testify is a remnant of the "inquisitorial system of criminal justice," *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 55 [84 S.Ct. 1594, 1596, 12 L.Ed.2d 678], which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. *People v. Modesto,* 62 Cal.2d 436, 452–453 [42 Cal.Rptr. 417, 426–427], 398 P.2d 753, 762–763. What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another.

380 U.S. at 614, 85 S.Ct. at 1232 (footnote omitted).

▉ Appellee contends that there is precedent for permitting a prosecutor to make reference to a defendant's failure to testify, where, as here, defense counsel has accused the Government of not giving his client an opportunity to explain. In *United States v. Roberts,* 548 F.2d 665, 668–69 (6th Cir.1977), two defense attorneys explained to a federal jury that they had advised their clients not to testify because two and a half years had elapsed since the robbery, and they could not be expected to recall what they had done on a particular day at a

particular time so long ago. The court held that the prosecutor was permitted to rebut with the following statement: "my question to you, or the Government's question to you is, do you think you would remember when you were arrested for bank robbery?" 548 F.2d at 669. Although the court allowed this *indirect* comment, neither *Roberts* nor the other case cited by appellee, *Cook v. Bordenkircher,* 602 F.2d 117 (6th Cir.1979), suggests that a direct comment on a defendant's failure to testify can be made, even if defense counsel has baited the prosecutor. In light of Mr. Robinson's counsel's statements, we can comprehend the desire of the district court to give "equal time," as it were, to the Government, but the action taken was impermissible under the fifth amendment. The error was not cured, moreover, by the court's later jury charge.

The prosecutor's comment in the instant case was an overt reference to the defendants failure to testify, not an oblique reference which reasonably could be construed in any other way. *See Angel v. Overberg,* 682 F.2d 605 (6th Cir.1982) (*en banc*).[4] In this instance it appears that "the prosecutor's manifest intent was to comment on the accused's failure to testify" and "the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Steele v. Taylor,* 684 F.2d 1193, 1204 (6th Cir.1982). The instant case is therefore distinguishable from *Butler v. Rose,* 686 F.2d 1163 (6th Cir.1982) (*en banc*), in which the court declined to grant a writ of habeas corpus to a petitioner who had been convicted in a state court trial.[5]

---

**4.** "If two plausible interpretations can be given to a prosecutor's ambiguous final argument, the court should not strive to adopt the one which casts doubt upon the prosecutor's intentions." 682 F.2d at 608.

**5.** The following statements were made by the prosecutor at closing argument in *Butler:*

> Well, I submit to you, ladies and gentlemen, that you cannot allow that to happen in this case. Mr. Butler is an instructor and you have got to tell him as an instructor he cannot do this and get away. He cannot do this and just get it back and have an attorney say,

> "Ah, she is just not telling the truth" without putting one witness to show why she might be telling otherwise or *how* she might be telling otherwise. Apparently what Mr. Ellis is saying is that in a rape case we are just going to always say it is just made up and put on no proof to show why it was made up or anything to indicate the witness is lying in any way and then you just can't convict, couldn't convict in any rape case.

686 F.2d at 1166–67.

> When the alleged infringement consists of statements which do not comment directly on the defendants failure to testify or sug-

Furthermore, since the instant case is before the court on direct review, not habeas corpus relief, the standard of review is more stringent. *See United States v. Hasting,* —— U.S. ——, ——, 103 S.Ct. 1974, 1983, 76 L.Ed.2d 96 (Stevens, J., concurring).[6] In the instant case the prosecutor's statement was the kind of comment on Mr. Robinson's failure to testify that an inference of guilt was to be drawn therefrom. It was therefore "fundamental error." *Rachel v. Bordenkircher,* 590 F.2d 200, 202 (6th Cir.1978).

### III.

In cases involving such direct comments as the one at bar, "the court must reverse unless the prosecution can demonstrate that the error was harmless beyond a reasonable doubt." *Raper v. Mintzes,* 706 F.2d 161, 164 (6th Cir.1983). The government contends, without briefing the issue, that the error is harmless. In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court fashioned the following harmless error rule in the context of a *Griffin* violation:

> [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

386 U.S. at 24, 87 S.Ct. at 828. In *Chapman* the Supreme Court found that the comments by the prosecutor were not harmless beyond a reasonable doubt:

> [T]he state prosecutor's argument and the trial judge's instruction to the jury continuously and repeatedly impressed the jury that from the failure of petitioners to testify, to all intents and purposes, the inferences from the facts and evidence had to be drawn in favor of the State—in short, that by their silence petitioners had served as irrefutable witnesses against themselves. And though the

case in which this occurred presented a reasonably strong "circumstantial web of evidence" against petitioners, it was also a case in which, absent the constitutionally forbidden comments, honest, fair minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions. Such a machine-gun repetition of a denial of constitutional rights, designed and calculated to make petitioners' version of the evidence worthless, can no more be considered harmless than the introduction against a defendant of a coerced confession.

386 U.S. at 25–26, 87 S.Ct. at 828–29 (citations omitted).

Just recently in *United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Supreme Court reaffirmed the harmless error doctrine and applied it to uphold a less severe *Griffin* violation. In *Hasting,* the federal prosecutor made reference to the defense's failure to "challenge" critical evidence. The Supreme Court held:

> The question a reviewing court must ask is this: Absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?

—— U.S. at ——, 103 S.Ct. at 1981. (citations omitted). Summarizing the evidence the Supreme Court found that "a more compelling case of guilt is difficult to imagine," —— U.S. at ——, 103 S.Ct. at 1982, and held the error harmless.

The Sixth Circuit has applied the harmless error rule to *Griffin* violations. The

---

gests that an inference of guilt should be drawn from this fact, a reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation.
686 F.2d at 1170.

**6.** Justice Stevens found a more stringent test to be warranted in reviewing whether a federal criminal conviction is harmless than would be warranted in reviewing a state conviction. The same logic would apply to the first step of determining whether a comment constitutes a *Griffin* error.

court employed it in *Berryman v. Colbert*, 538 F.2d 1247 (6th Cir.1976) finding that a state prosecutor's improper reference to the failure of the defendant to testify could be considered harmless as to one of the counts of which he had been convicted since the comment principally complained of did not refer directly to that count. The court made clear that it was not relying completely on that distinction, but rather that it was also applying *Chapman* to hold the error harmless as to that particular count. The court found the "overwhelming and undisputed evidence of appellant's guilt" sufficient to find the prosecutor's comment "harmless beyond reasonable doubt." 538 F.2d at 1251.

The Sixth Circuit has since articulated with more particularity the rule to be applied in determining whether a *Griffin* error is harmless. In *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir.1979), the court examined in detail the analysis to be applied in determining whether such an error is harmless. As the following excerpt indicates, the court applied a very narrow standard:

> Harmless error, in the context of a violation of a constitutional right of a defendant, is an extremely narrow standard, permitting the State to avoid the retrial of a defendant only when it can demonstrate beyond a reasonable doubt that the error did not contribute in any way to the conviction of the defendant. *Chapman v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705].

605 F.2d at 278. Some of the factors to be taken into account include the strength of the evidence, the nature of the improper comment, any admonition to counsel, instructions to disregard, and "whether the trial was otherwise relatively error free." *Id.* at 279. *See also Hearn v. Mintzes*, 708 F.2d 1072 (6th Cir.1983).

██ When we consider the standards applied in *Eberhardt*, we find that in the instant case, the government has failed to tip the scales as to defendant Thomas Robinson, Jr. While the evidence is strong as to both defendants, it is at least in part circumstantial, and no curative instruction was given at the time of the comment on Mr. Robinson's silence. *See United States v. Flannery*, 451 F.2d 880, 882 (1st Cir.1971). Furthermore, the improper comment was made during the prosecutor's rebuttal—the final chance for either attorney to address the jury. Under these circumstances, we cannot find the error harmless beyond a reasonable doubt as to defendant Thomas Robinson, Jr.

### IV.

While it was error for the trial court to have permitted the prosecutor to comment on the failure of one of the defendants to take the stand, we must consider whether that error infected the trial of the other defendant so as to require her conviction to be set aside.

The entire emphasis of the statements made by defense counsel in his closing were on Mr. Robinson's conduct, which the prosecutor, and also the trial court, deemed unfair and baiting. The prosecutor's comment, which we have found to constitute constitutional error, was directed also entirely toward Mr. Robinson. We consider, then, whether the remarks constituted reversible error by also tainting the trial of codefendant Aleida Robinson, who similarly did not testify.

As pointed out, the strong emphasis of the comment held to be a constitutional violation as to Mr. Robinson was that he had indeed been afforded an opportunity to explain the fraud charges. For example, as set out in footnote 2, these references responded to by the prosecutor were among those made by defense counsel in his closing jury argument to Mr. Robinson, but *no allusions were made to Mrs. Robinson:*

> I don't know how many statements we heard of *Mr.* Robinson. . . . Did they ever give *him* a chance to explain . . . ?

> Did they ever give *this man* an opportunity in their many, many statements they took . . . to say, "Well, I had two bedroom sets."

> . . . .

... When *he* came to Tennessee ... they interviewed *him* about the arson....

....

... Why let *the defendant* disprove them giving *him* an opportunity to explain?

....

They brought you the type of proof that they carefully filtered, to try to infer [sic] circumstantially the guilt of *Mr.* Robinson.

(Emphasis added.)

■ Under all these circumstances, we find that the error which occurred was harmless beyond a reasonable doubt on the charges made against Aleida Robinson. Each defendant was on trial separately, and the jury was told that the guilt or innocence of one defendant was not indicative of the guilt or innocence of the other defendant. While the evidence implicated both defendants in the fraud charged, this factor is not sufficient under the particular circumstances recounted to set aside the verdicts as to Mrs. Robinson.

Mrs. Robinson was charged with fraud with her husband and with aiding and abetting him in the commission of fraud. We find distinguishable the cases holding that where comment is made on the failure of one defendant to testify, that misconduct may also be prejudicial to a co-defendant. *Kinser v. Cooper,* 413 F.2d 730 (6th Cir. 1969); *Scott v. Perini,* 439 F.2d 1066 (6th Cir.1971). Unlike the situation in *Kinser,* Mrs. Robinson was charged with a substantive offense, and the *Kinser* court observed

it is not like a *joint indictment* of two persons for a crime where *either one* or *both* may be convicted.

413 F.2d at 732 (emphasis added). Also in the instant case, there was substantial evidence of fraud from a number of witnesses, whereas in *Kinser,* there was essentially the testimony only of the rape victim and the alleged perpetrator of the offense; the comment on the silence of the alleged aider and abettor was therefore particularly significant in that context where the defendant had taken the stand to deny that he was the attacker.

In *Scott,* it was observed that "the prosecuting attorney commented vigorously and at length upon the failure of Pollard [the co-defendant] to take the stand" and the Judge himself commented on that silence. 439 F.2d at 1067. The defendant who objected in *Scott* to the prosecutor's and the judge's comments on the silence of a co-defendant also himself took the stand, unlike either defendant in the case sub judice. We find these cases not controlling under these circumstances.

Accordingly, we reverse the conviction on all counts of Mr. Robinson, but we affirm the conviction of Mrs. Robinson. The cause is remanded for further proceedings in accordance with this opinion.