Danny G. RACHEL, Petitioner-Appellant,

v.

Donald E. BORDENKIRCHER,
Respondent-Appellee.

No. 78-3040.

United States Court of Appeals,
Sixth Circuit.

Argued June 20, 1978.

Decided Dec. 29, 1978.

J. Vincent Aprile, II, Asst. Deputy Public Defender, M. Gail Robinson, Asst. Public Defender, Frankfort, Ky., for petitioner-appellant.

Danny Gale Rachel, pro se.

Robert F. Stephens, Atty. Gen. of Kentucky, Patrick B. Kimberlin, II, Rickie L. Pearson, Asst. Attys. Gen., Frankfort, Ky., for respondent-appellee.

Before PHILLIPS, Chief Judge, KEITH, Circuit Judge, and PECK, Senior Circuit Judge.

KEITH, Circuit Judge:

On January 21 and 22, 1974, petitioner Danny Gale Rachel and a codefendant, George Bishop Boggs, were tried for murder in the Letcher County, Kentucky Circuit Court. Petitioner was convicted of voluntary manslaughter and sentenced to 18 years imprisonment. Boggs was convicted of wilful murder and sentenced to life imprisonment. On appeal, the Court of Appeals of Kentucky (now the Supreme Court of Kentucky) affirmed petitioner's conviction. *Rachel v. Commonwealth of Kentucky*, 523 S.W.2d 395 (1975). Thereupon, petitioner petitioned the United States District Court for the Eastern District of Kentucky for a writ of habeas corpus. The district court dismissed petitioner's application in a memorandum opinion filed November 17, 1977. We reverse the District Court.

The background facts of this case are detailed in the Kentucky Court of Appeals' decision. *See Rachel, supra.* On the morning of July 21, 1973, petitioner, after having been arrested earlier that morning for public drunkenness, told the deputy jailer of the Harlan County jail that he believed that he and Boggs, a companion arrested along with petitioner for drunken driving, had killed a man the previous evening. Upon receiving this information, the jailer summoned Harlan County Sheriff Walden Holbrook and Detective Murrell Harrison of the Kentucky State Police. After being advised of his *Miranda* rights,[1] petitioner told Sheriff Holbrook that he had helped Boggs choke one Mack Trent, Jr., to death the night before.

Sometime thereafter, Detective Murrell Harrison arrived, accompanied by State Trooper Ronnie Jarvis. After again being advised of his rights, petitioner was interviewed by these officers. Petitioner later signed a written narrative statement prepared by Detective Harrison setting out the events of the previous night which implicated only Boggs in the strangulation death of Trent. When questioned by Detective Harrison regarding the apparent discrepancy between this written statement and his prior oral account of the previous evening's occurrences given to Sheriff Holbrook, petitioner acknowledged that he had implicated himself in the killing in his prior statement to Sheriff Holbrook but claimed that these inculpatory statements were made due to his fear of Boggs.

Detective Harrison next interviewed Boggs, who later signed a written statement wherein he confessed to having choked Trent while petitioner held Trent's hands. Petitioner's oral and written statements were both admitted into evidence. Boggs' statement was also admitted into evidence at trial, although the reference to petitioner having held the victim's hands was deleted. Neither petitioner nor Boggs testified at the joint trial.

On this appeal, petitioner asserts that two constitutional errors were committed at his trial below. First, petitioner contends that the introduction into evidence at the joint trial of Boggs' out-of-court statement inculpating him denied petitioner, upon Boggs' refusal to testify, his right of cross examination as secured by the Confrontation Clause of the Sixth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment. Second, petitioner asserts that certain comments made by the prosecution during closing argument regarding petitioner's post-arrest silence and his failure to testify at trial deprived him of due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution. We find merit in petitioner's second claim and reverse.

In his closing argument to the jury, the prosecutor stated:

"Now, we will never know what happened to this boy Trent before he was choked up there. You can draw any reasonable inference you want to about

---

1. *Miranda v. Arizona*, 384 U.S. 436, 467–473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

those bruises on that dead man's face. We don't know when he was made a captive for example. We don't know how or whether or when he was beaten. We don't know what happened to him in the hour or two hours before he was taken up there and choked to death and dumped over the mountainside. We will never know, these men won't tell us. The only other man who could tell us is dead and in his grave. . . . "

It is apparent that the prosecutor calculated these remarks to create in the jurors' minds an inference of guilt based solely on petitioner's election to remain silent. Such conduct was condemned by the United States Supreme Court over 85 years ago in federal criminal cases, *Wilson v. United States*, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893), and over thirteen years ago in state criminal prosecutions, *Griffin v. State of California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We would have hoped that the condemnation it received from the Supreme Court would have been sufficient to bar such conduct from a courtroom forever. In *Griffin, supra*, the Supreme Court stated:

"[C]omment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' . . . which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not

magnify that inference into a penalty for asserting a constitutional privilege. . . What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."

380 U.S. at 614, 85 S.Ct. at 1232–33. (citations and footnote omitted). The Court went on to forbid comment to the jury by either the court or the prosecution regarding a criminal defendant's refusal to testify in his own defense at trial.

"[T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

380 U.S. at 615, 85 S.Ct. at 1233 (footnote omitted).

■ The prosecutor's comments in this case regarding petitioner's silence at trial were highly improper and constituted a flagrant violation of *Griffin.* We cannot countenance this kind of clear prosecutorial abuse of petitioner's established constitutional guarantees. In the context of this criminal prosecution, these statements constituted fundamental error.

■ In addition to his comments regarding petitioner's election not to testify at trial, the prosecutor also made references to petitioner's silence at the time of his arrest.[2] The Court is aware that, given the

---

2. In an apparent attempt to discredit petitioner's explanation of the discrepancy between his oral statement to Sheriff Holbrook and the later written statement taken down by Detective Harrison, the prosecutor stated:

"[A]t that time, you know, he would have you believe that he was afraid of his codefendant, Boggs. 'I was afraid of Boggs,' he wants you to believe, 'And any statement that I made was made out of fear and terror for my life.' But ladies and gentlemen, when he was picked up there in the čompany of Boggs driving that automobile, when this officer stopped him and put him under arrest and took him to the police station, he didn't

say, 'I'm in mortal terror of my life. I want to make a statement. I want to discharge my duty as a citizen.' He kept quiet. He didn't make any statement there about this crime." Later in his closing argument the prosecutor again discussed petitioner's failure to exculpate himself once he was taken into custody.

"There was a driveway right there running down the road to the other house. . . . Don't you know he would have run down there and knocked on the door and said, 'Help! Call the police! Call the Sheriff!!' He didn't do that and don't you know that the next day when they got him in Cumberland and put him in the custody of that turnkey,

proper circumstances, such statements by the prosecutor might also constitute constitutional error. *Scarborough v. State of Arizona*, 531 F.2d 959 (9th Cir. 1976). *See also, Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Minor v. Black*, 527 F.2d 1 (6th Cir. 1975). But since a determination of the nature and the effect of these statements is not necessary to our disposition of this case, we need not address them.[3]

■ Notwithstanding respondent's argument to the contrary, the Court is of the opinion that petitioner has exhausted state remedies in regard to the issues raised on this appeal. "It is essential that, in a habeas corpus action in the federal court, the petitioner, must bring to the attention of the state court the constitutional claims upon which he relies." *Meeks v. Jago*, 548 F.2d 134 (6th Cir. 1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). *See also, Fairbanks v. Cowan*, 551 F.2d 97 (6th Cir. 1977); *Lucas v. Michigan*, 420 F.2d 259 (6th Cir. 1970). However, satisfaction of the exhaustion requirement "cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978). All that is required is that the state courts have a fair opportunity to consider the constitutional claim. *See United States v. Damon*, 496 F.2d 718, 721 (2d Cir. 1974), *cert. denied*, 419 U.S. 954, 95 S.Ct. 215, 42 L.Ed.2d 172 (1974).

■ In his brief to the Court of Appeals of Kentucky, petitioner acknowledged that his trial counsel had failed to make a timely objection in compliance with Kentucky's contemporaneous objection rule to the pros-

ecutor's comments on petitioner's post-arrest silence and election not to testify. However, petitioner urged the state appellate court to review the error anyway because it had resulted in a "manifest injustice."[4] However, the Court of Appeals of Kentucky did not directly address this issue in its opinion affirming petitioner's conviction. Instead, the court disposed of the issue under the heading of those issues which it found after careful examination to have been "either (1) without merit or (2) . . . not . . . properly preserved for review." *Rachel, supra* at 401. We believe the Court of Appeals of Kentucky had a fair opportunity to consider the constitutional claims asserted in this appeal and that petitioner has exhausted his state remedies.

In his petition to the district court, petitioner again acknowledged that the prosecutorial misconduct issue had not been properly preserved for state appellate review. However, he urged that court to review the issue pursuant to the "cause" and "prejudice" standard set down in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In conjunction with his petition to the district court, petitioner's two trial counsel submitted affidavits in which they swear that their failure to object to the prosecutor's improper closing remarks was due to their inexperience and/or lack of knowledge of the law. However, the district court declined to review the issue on its merits in the belief that the Kentucky courts should first be given an opportunity to "review the non-compliance of the contemporaneous objection rule upon a showing of manifest injustice, based specifically on incompetence of counsel." *Rachel v. Bordenkircher*, Civ.Action No. 77-385 (Memorandum Opinion, Eastern Dis-

---

he would have made that same cry, and don't you know if he had been an innocent, terrorized that night by a vicious character, when Sheriff Holbrook came in he would have said 'Sheriff, protect me. I want to come clean and tell the whole story!' he didn't do that. No, sir."

3. The Court is aware that deciding the effect of these statements would also require resolution

of difficult questions regarding the retroactive application of the law set down by the cases cited in the text.

4. In so urging the court, petitioner cited *Stone v. Commonwealth of Kentucky*, 456 S.W.2d 43 (1970), where the Court of Appeals of Kentucky had reviewed an unpreserved error under the "manifest injustice" standard.

trict of Kentucky, filed November 17, 1977, p. 3).

We disagree. As already noted, the Kentucky appellate court has already had a fair opportunity to review this issue and to require petitioner to trek through Kentucky's post-conviction relief procedure again is simply to further delay redress of a clear infraction of his constitutional rights. *See United States v. Yaeger*, 299 F.Supp. 321 (D.N.J.1969). Furthermore, requiring petitioner to apply for relief again in the Kentucky courts might be an exercise in futility.[5] *See Lucas v. Michigan, supra.*

Turning now to the merits of petitioner's claim, we note that the Supreme Court's opinion in *Wainwright, supra*, left for future resolution "the precise definition of the 'cause'—and—'prejudice' standard," 433 U.S. at 87, 97 S.Ct. at 2507. However, the Court did note that the "cause" and "prejudice" standard set down in that case was narrower than the old *Fay v. Noia*[6] "deliberate by-pass" standard. 433 U.S. at 87, 97 S.Ct. 2497. We also note that while the question of what constitutes "cause" and "prejudice" in satisfaction of the standard set down in *Wainwright, supra*, does not appear to be one of first impression in this Circuit, *See Canary v. Bland*, 583 F.2d 887 (6th Cir. 1978), and *Berrier v. Egeler*, 583 F.2d 515 (6th Cir. 1978), the exact parameters of the standard have yet to be defined by this Court.

The affidavit of Mr. Early, petitioner's lead trial counsel, filed with the district court reveals that he had been in practice for less than eight months at the time of the trial and that petitioner's trial was one of the first criminal trials where he acted as counsel. The affidavit of Mr. Ayer, the attorney assisting Mr. Early, reveals that he was not involved with the case prior to trial, that petitioner's trial was the first felony trial in which he was involved as a defense counsel, and that his role at the trial was simply to consult with Mr. Early. Both attorneys swear that their failure to make timely objections to the improper comments resulted from either inexperience, inattention or lack of knowledge of the law, and were not tactical decisions.

■ We are of the opinion that these affidavits satisfy the "cause" requirement of the *Wainwright* test. We are further of the opinion that the required "prejudice," in light of the clear constitutional violations committed in this case, can be presumed. *Cf. Canary v. Bland, supra*. Alternatively, "we find no bar to habeas relief in this case because [petitioner's] trial counsel made no objection . . . at the time of trial. The magnitude of the error in this trial would make it cognizable in a habeas proceeding as plain error even where no objection had been made before the trial court." *Berrier, supra* at 522.

Accordingly, the judgment of the district court is reversed and the case is remanded to the District Court with instructions to grant petitioner's release unless the state initiates procedures to retry him within a reasonable time.[7]

5. The district court noted that "[p]etitioner has not conclusively proven that the assertion of the issue under Kentucky R.Cr. 11.42 would be futile." (Memorandum Opinion at p. 3.) However, it appears clear that Kentucky appellate courts will not review on a motion under R.Cr. 11.42 an issue which has already been presented on direct appeal. *See Thacker v. Commonwealth*, 476 S.W.2d 838, 839 (Ky.1972).

6. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

7. Petitioner contended in the Court of Appeals of Kentucky and in his appeal to this court that the admission of Boggs' statement at the joint trial, even after redaction, violated his Sixth Amendment right of confrontation pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because there was a substantial risk that the statement, even as redacted, so implicated him in the crime that the jury used it in deciding his guilt. Because of our disposition of the case we do not reach this issue. However, the Court believes that if it were to squarely confront this issue, it would be inclined to agree with the district court that no constitutional violation occurred, or that to the extent error was committed, it was harmless. *See Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Hodges v. Rose*, 570 F.2d 643 (6th Cir. 1978); *Burkhardt v. Lane*, 574 F.2d 346 (6th Cir. 1978).