Frederick SPALLA,
Petitioner-Appellant,

v.

Dale FOLTZ, Respondent-Appellee.

No. 85–1653.

United States Court of Appeals,
Sixth Circuit.

Submitted and Argued March 11, 1986.

Decided April 18, 1986.

Rehearing Denied June 10, 1986.

Stuart B. Lev, Detroit, Mich., for petitioner-appellant.

Thomas A. Kulick (argued), Lansing, Mich., for respondent-appellee.

Before ENGEL, CONTIE and MILBURN, Circuit Judges.

CONTIE, Circuit Judge.

Frederick Spalla appeals from the denial of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, advancing four arguments for setting aside his second-degree murder conviction. For the reasons set forth below, we affirm the district court's denial of habeas corpus relief.

## I.

The record reveals that petitioner Spalla borrowed a gold colored 1974 Dodge Colt from a Ms. Ruth Briggs on August 20, 1975 at approximately 5:30 p.m. The petitioner picked up Ronald Furby and left Furby's house at 7:30 p.m. Steve Bonno saw them leaving together in what he thought was a gold or copper colored Vega. Bonno testified that petitioner and Furby were planning to drive to Lake Orion, which was north of Furby's Utica, Michigan home.

James Malatesta testified that he heard gunshots at about 7:45 p.m. coming from a cornfield located on Snell Road. He heard two car doors slam and saw a small copper colored two-door car drive away on Snell Road. He believed the car was a Nova, although he testified that it could have been Briggs' Dodge Colt. He was unable to positively identify a photograph of Briggs' car. This cornfield was 8.4 miles from Furby's house in the direction of Lake Orion. It takes approximately fourteen minutes to drive from Furby's house to the cornfield. Malatesta discovered Furby's body in a wooded area by the cornfield.

Around 7:50 p.m., Ruth Spencer saw an "orange-brown colored" car pull out of a cornfield, which proceeded down Snell Road at a high rate of speed. Spencer testified that she thought the car was a Vega or Chevrolet product and was unable to positively identify the car she saw as being Briggs' Dodge Colt. Bernard Stechschulte also saw a subcompact car driving down Snell Road at a high rate of speed between 7:30 and 8:00 p.m. He thought the car was a beige Dodge Dart or Duster.

Between 8:00 and 8:10 p.m., a friend of petitioner's, Paul McGrath, saw petitioner driving on Twenty-Four Mile Road. He tried to catch up with the petitioner by driving well over the speed limit but was unable to. He testified that he knew the car petitioner was driving belonged to Briggs, but identified it as a brown or tan Opel Cadet.

Petitioner returned the car to Briggs at Lou's Lounge in New Baltimore at approximately 8:30 p.m. The distance from the cornfield to the place he returned the car is 25.2 miles. Detective Putman testified that it took him thirty-seven minutes to drive between these locations traveling at the speed limit.

The day after Furby's body was found, Detective Putman interviewed the petitioner. Petitioner stated that he had picked up

Furby at 7:30 p.m. in a Dodge Colt and returned the car to Briggs at 8:30 p.m. He also stated that he had seen Furby after he had returned the car to Briggs.

Furby died of gunshot wounds to the head fired at close range. Near Furby's body, Detective Putman discovered a crumpled pack of Marlboro cigarettes. Petitioner smoked Marlboro cigarettes and Furby smoked Kool cigarettes. Both types of cigarette butts were discovered in Briggs' Dodge Colt.

The petitioner was charged on an open charge of murder. He was first tried by a jury in late February to early March 1976. He was convicted of first-degree murder and sentenced to life imprisonment. He appealed this conviction, which was eventually reversed and remanded for a new trial on March 28, 1980 by the Michigan Supreme Court. *People v. Spalla*, 408 Mich. 876, 290 N.W.2d 729 (1980).

In July 1981, petitioner received a second jury trial. He was again convicted of first-degree murder and sentenced to life imprisonment. After an affirmance by the Michigan Court of Appeals, the Michigan Supreme Court, on April 27, 1984, reduced the conviction to second-degree murder because "[t]here was insufficient evidence of premeditation to support a conviction of first-degree murder." *People v. Spalla*, 419 Mich. 863, 346 N.W.2d 841 (1984). On remand to the trial court for resentencing, the petitioner again received a life sentence.

The petitioner thereafter filed this writ of habeas corpus under 28 U.S.C. § 2254. On January 15, 1985, the United States District Court for the Eastern District of Michigan denied Spalla's petition. *Spalla v. Foltz*, 615 F.Supp. 224 (E.D.Mich.1985).

On appeal to this court, the petitioner raises several arguments. First, petitioner asserts that the evidence presented against him at trial was insufficient to support his conviction of second-degree murder. Second, he argues that his Fifth Amendment rights were violated when the prosecutor, during closing argument, referred to the petitioner's failure to testify at trial.

Third, petitioner argues that the trial court's failure to grant the jury's requests for transcripts denied him due process and the right to trial by jury. Finally, petitioner argues that he was denied due process because the trial court lacked jurisdiction to try him for first-degree murder. We will address each of these issues in turn.

## II.

### A.

■ In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court set forth the standard for review of the sufficiency of the evidence to sustain a state-court conviction on a petition for habeas corpus relief. The reviewing court must view the evidence in the light most favorable to the prosecution and must deny habeas relief if *"any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789 (emphasis added). *See also Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir.1985); *Fuller v. Anderson*, 662 F.2d 420, 423 (6th Cir.1981), *cert. denied*, 455 U.S. 1028, 102 S.Ct. 1734, 72 L.Ed.2d 150 (1982).

■ We believe that the circumstantial evidence produced in this case is sufficient under *Jackson v. Virginia* to uphold the state court's conviction. *See, e.g., Scott v. Perini*, 662 F.2d 428 (6th Cir.1981), *cert. denied*, 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982). Specifically we note that there were witnesses who described the getaway car in very similar terms. Other witnesses, including the defendant, placed the defendant in a car with the same general description. The defendant had driven with the victim toward Lake Orion at 7:30 p.m. At approximately 7:45 p.m., gunshots were heard in a cornfield and the victim was found shot to death. The location of the cornfield was only about fifteen minutes from the victim's house, where the pair had left together. Further, the car was seen speeding away, and an acquaintance of the defendant testified that he saw the defendant speeding toward New Balti-

more. The defendant returned the car to the owner at approximately 8:30 p.m. Since it takes about thirty-seven minutes to drive from the cornfield to New Baltimore, the defendant could have killed the victim and returned the car within that time frame. It should also be noted that the defendant originally gave a false exculpatory statement to the police.

We agree with the district court that these facts show substantially more than mere opportunity and a false statement. *Spalla,* 615 F.Supp. at 229. These facts and the inferences that can properly be drawn from them, though circumstantial, convince us that a rational trier of fact could have found the defendant guilty of second-degree murder beyond a reasonable doubt.

### B.

The petitioner next argues that the following portions of the prosecutor's argument, made in rebuttal to the defense counsel's closing argument, were improper and violated the petitioner's Fifth Amendment rights:

They [the defense] say [there is] no description of anyone at the scene. That's true, I told you from the outset. This is a murder case. We have no eyewitness.

And lastly, the Defense says, "Well, the Prosecution hasn't proven any motive and people don't kill people without reasons." I certainly don't quarrel with that. No doubt there was a very good reason. I shouldn't say "a very good reason." No doubt that when the Defendant shot and killed Ron Furby that the evidence has proven overwhelmingly that he did, he had a reason for doing that, *but there is no evidence before you as to what that reason was.* And when Judge Templin instructs you, he will specifically tell you that motive is not an element of the offense of murder. I can prove a murder and you may find a murder even though the motive has not been proven and you don't know what it is. All you have to find is that, in fact, the

Defendant murdered Ron Furby. You do not have to find why.

The law recognizes the difficulty you have with a murder case and specifically says that that is not required. But when you consider the lack of motive and the lack of evidence, I ask you to consider how that might be proved. *Who would know the motive? The killer would know the motive and the evidence has proven that the killer is the Defendant, Frederick Spalla.* Yet when Frederick Spalla was questioned about [sic] the police, what did he do? He lied to them in every detail, he lied to them. *Who else might know the motive? Well, perhaps Ron Furby might. But as the saying goes, dead men tell no tales.*

(Emphasis added).

■ In *Raper v. Mintzes,* 706 F.2d 161 (6th Cir.1983), this court recognized that there was a distinction between direct and indirect comments upon a defendant's failure to testify:

The fifth amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself...." An important corollary to that right is that neither a prosecutor nor a trial judge may comment upon a criminal defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The rule set forth in *Griffin* applies to indirect as well as direct comments on the failure to testify. Cases involving direct comments pose little difficulty as the court must reverse unless the prosecution can demonstrate that the error was harmless beyond a reasonable doubt.... Cases ... involving indirect comments on the failure to testify are more troublesome.... [W]e recently refused to adopt a *per se* rule that comments as to the uncontradicted nature of evidence violated *Griffin* even where the evidence in question could only have been contradicted by the defendant.... Rather, the court must conduct a "probing analysis of the context of the comments," *[United States v.] Robinson,*

651 F.2d [1188, 1197 (6th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981) ], in order to determine *"[w]hether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Butler, [v. Rose],* 686 F.2d [1163, 1170 (6th Cir.1982) (en banc) ].

*Id.* at 164–65 (footnote and citations omitted) (emphasis added). Therefore, if a prosecutor's comments are "indirect," the court should not automatically reverse, but should determine whether the comments were intended as a comment on the defendant's failure to testify or whether the jury would naturally and necessarily take them to be comments on the failure of the accused to testify.

■ Since the prosecutor made these comments in rebuttal to the defense's argument that there was no evidence as to motive, we are of the opinion that the prosecutor's remarks do not constitute direct comments on the defendant's failure to testify, but were merely indirect comments. Therefore, we must conduct a "probing analysis of the context of the comments" to determine if they were unconstitutional. *United States v. Robinson,* 651 F.2d 1188, 1197 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981).

A probing analysis requires consideration of the following four factors:

1) Were the comments "manifestly intended" to reflect the accused's silence *or* of such a character that the jury would "naturally and necessarily" take them as such;

2) Were the remarks isolated or extensive;

3) Was the evidence of guilt otherwise overwhelming;

4) What curative instructions were given, and when.

*Hearn v. Mintzes,* 708 F.2d 1072, 1077 (6th Cir.1983).

As mentioned above, we are convinced that the comments were not "manifestly intended" to reflect on the defendant's failure to testify. *See Steele v. Taylor,* 684 F.2d 1193, 1204 (6th Cir.1982), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983) ("Manifest intent will not be found 'if some other explanation for his remark is equally plausible,' " quoting *Robinson,* 651 F.2d at 1197). Nor do we believe that the jury would have taken these statements as comments on the defendant's failure to testify since the prosecutor made it clear that his argument was aimed at the lack of evidence regarding motive.

Further, the remarks were isolated, the evidence of guilt was strong and, although curative instructions were not given directly after the comments were made, curative instructions were given as part of the regular jury instructions which immediately followed the prosecutor's rebuttal argument. We therefore hold that these comments, viewed in the context they were made, cannot form the basis for habeas relief.

### C.

The petitioner next argues that he was denied due process and the right to trial by jury when the trial court failed to grant the jury's requests for transcripts. For the following reasons, we find this argument to be unpersuasive.

During the course of its deliberation, the jury made two requests for portions of the transcript. The jury first requested transcript of the testimony concerning the length of time it took to drive between different locations. The judge explained to the jury that it would take time to have portions of the transcript typed, and encouraged the jury to continue deliberating.[1]

---

1. Specifically, the judge made the following remarks to the jury:

   Well, again, it will take—hopefully you could remember it. If we have it typed up, we'll have to reach a decision what witness'

   testimony would have to be typed up and that will take some time.

   Why don't you go back and see what you can do and if you can't reach a decision in a reasonable length of time without having

This occurred on the jury's first day of deliberating.

On its third day of deliberating, the jury requested those portions of the transcript which were then available. However, before the court responded to this request, the jury returned a verdict of guilty.

 It is generally within the trial court's sound discretion to determine whether particular jury requests will be granted. *See United States v. Jackson,* 257 F.2d 41, 43 (3d Cir.1958). Such a ruling, like rulings concerning the admissibility of evidence, may not form the basis of federal habeas relief unless a constitutional question is raised. *See, e.g., Poole v. Perini,* 659 F.2d 730, 735 (6th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982) (rulings on instructions or admissibility of evidence "must violate some right guaranteed to the defendant by the fourteenth amendment" to form the basis of federal habeas relief); *Bell v. Arn,* 536 F.2d 123, 125 (6th Cir.1976) ("admissibility of evidence may not be questioned in a federal habeas corpus proceeding unless it raises a federal constitutional question"). However, if the trial court's error "rises to the level of depriving the defendant of fundamental fairness, the claim is remediable on a petition for habeas corpus relief." *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985).

In the instant case, the trial judge did not reject the jury's request outright and informed the jury that the information would be provided if necessary. We do not believe that encouraging the jury to partake in further deliberation without the aid of requested transcript is, in itself, an error. In the context of this case, failure to satisfy the particular jury requests did not rise to the level of being fundamentally unfair. Although it was important to determine the length of time it took to drive between different locations, the testimony on this issue was not key to petitioner's defense, nor was it exculpatory. *Cf. United States v. Jackson,* 257 F.2d 41, 43 (3d Cir.1958) (question of whether an individual was a government employee was critical to the entrapment defense; denying the jury its request for this information was unfair). Therefore, we cannot grant habeas corpus relief on this ground.

**D.**

Petitioner asserts that the Michigan trial court lacked jurisdiction to try him for first-degree murder. He argues that he was bound over on an information charging him with "murder." Under Michigan common law, petitioner notes, there are no degrees of murder since first-degree murder is a creature of statute. He argues that the trial court therefore lacked jurisdiction to try him for first-degree murder, even though his conviction was lowered to second-degree murder by a higher state court.

We believe this argument is wholly without merit. This claim rests on an interpretation of state law and the failure of the trial judge to comply with state law requirements. *See Berry v. Mintzes,* 529 F.Supp. 1067, 1075 (E.D.Mich.1981), *aff'd,* 726 F.2d 1142 (6th Cir.), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984). Therefore, it is not cognizable in a federal habeas corpus proceeding. Further, this argument is arguably moot since the petitioner stands convicted of second-degree murder, not first-degree murder.

Accordingly, petitioner's request for habeas corpus relief is DENIED and the decision of the district court is AFFIRMED.

---

these portions typed up, then we'll have it typed up, but it will require additional time.
With that, then, let's recess and see what you can do and if you can't reach a decision, we'll have to agree on—we'll have to get together with Counsel and agree on what witness' testimony would be used, what portion would be typed up and that will take some time.